# 23-01233

IN THE

# United States Court of Appeals

## FOR THE SECOND CIRCUIT

JAMES PAPPAS,

*Lead Plaintiff-Appellant,*

STEVEN BURNHAM, Individually and on behalf of all others similarly situated,

*Plaintiff,*

HOWARD BROWN, Individually and on behalf of all others similarly situated,

*Consolidated Plaintiff,*

v.

QUTOUTIAO INC., JINGBO WANG, XIAOLU ZHU, SHAOQING JIANG, JIANFEI DONG, OLIVER YUCHENG CHEN, CITIGROUP GLOBAL MARKETS INC., DEUTSCHE BANK SECURITIES INC., LEI LI, CHINA MERCHANTS SECURITIES (HK) CO., LTD., UBS SECURITIES LLC, KEYBANC CAPITAL MARKETS INC., ERIC SILIANG TAN, YONGBO DAI, JAMES JUN PENG, FENG LI, CLSA LIMITED, HAITONG INTERNATIONAL SECURITIES COMPANY LIMITED, JEFFERIES GROUP LLC, LIGHTHOUSE CAPITAL INTERNATIONAL INC.,

*Defendants - Appellees.*

————————————————

On Appeal from the United States District Court for the Southern District of New York, Case No. 20-cv-6707, Judge Sidney H. Stein

## **BRIEF FOR DEFENDANTS-APPELLEES**

<table>
<tr><td>George S. Wang</td><td>Jonathan Rosenberg</td></tr>
<tr><td>Bo Bryan Jin</td><td>B. Andrew Bednark</td></tr>
<tr><td>Eric Yang</td><td>Amber L. Covucci</td></tr>
<tr><td>SIMPSON THACHER & BARTLETT LLP</td><td>O'MELVENY & MYERS LLP</td></tr>
<tr><td>425 Lexington Avenue</td><td>7 Times Square</td></tr>
<tr><td>New York, New York 10017</td><td>New York, New York 10036</td></tr>
<tr><td>*Attorneys for Defendants-Appellees*</td><td>*Attorneys for Defendants-Appellees*</td></tr>
</table>

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Qutoutiao, Inc. ("Qutoutiao" or "QTT" or the "Company") states as follows: Qutoutiao is a publicly held corporation and does not have any parent corporation. To the best of Qutoutiao's knowledge, no publicly held corporation owns 10% or more of Qutoutiao's stock.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Citigroup Global Markets Inc. states as follows: Citigroup Global Markets Inc. is a wholly-owned subsidiary of Citigroup Financial Products Inc., which, in turn, is a wholly-owned subsidiary of Citigroup Global Markets Holdings Inc. which, in turn, is a wholly-owned subsidiary of Citigroup Inc., a publicly held corporation. To the best of its knowledge, no publicly held corporation owns 10% or more of the stock of Citigroup Inc.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Deutsche Bank Securities Inc. states as follows: Deutsche Bank Securities Inc. is a wholly owned subsidiary of DB U.S. Financial Markets Holding Corporation, which in turn is a wholly owned subsidiary of DB USA Corporation, previously doing business as Taunus Corporation, which in turn is a wholly owned subsidiary of Deutsche Bank A.G., a publicly traded corporation. No publicly held company owns 10% or more of the stock of Deutsche Bank A.G.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee China Merchants Securities (HK) Co., Ltd. states as follows: China Merchants Securities (HK) Co., Ltd. is a wholly owned subsidiary of China Merchants Securities International Company Limited, which in turn is a wholly owned subsidiary of China Merchants Securities Co., Ltd., a publicly traded corporation. No publicly held company owns 10% or more of the stock of China Merchants Securities Co., Ltd.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee UBS Securities LLC states as follows: UBS Securities LLC is an indirect, wholly owned subsidiary of UBS AG, which is in turn wholly owned by UBS Group AG. No publicly-held corporation holds 10% or more of UBS Group AG's stock.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee KeyBanc Capital Markets Inc. states as follows: KeyBanc Capital Markets Inc. is a wholly-owned subsidiary of KeyCorp. KeyCorp is a publicly-held corporation that has no parent corporation. No publicly-held corporation owns 10% or more of KeyCorp's stock.

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Jefferies Group LLC states as follows: Jefferies Group LLC is a wholly-owned subsidiary of Jefferies Financial Group Inc. Jefferies Financial

Group Inc. is a public company whose common stock is publicly traded and owned by various individuals and entities.

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

STATEMENT OF THE ISSUES.........................................................................4

STATEMENT OF THE CASE .............................................................................5

I.    Factual Background.......................................................................................5

      A.    Qutoutiao and Its Stock Offerings.........................................................5
      B.    Qutoutiao's Advertising Business ..........................................................7
      C.    PRC Advertising Regulations ................................................................8
      D.    Qutoutiao's Strategy Shift in 2020........................................................9
      E.    CCTV Report .......................................................................................10

II.   Procedural Background ...............................................................................12

      A.    Case History .........................................................................................12
      B.    Plaintiff's Allegations...........................................................................12
      C.    The District Court Opinion ..................................................................13

SUMMARY OF ARGUMENT ..........................................................................15

STANDARD OF REVIEW ...............................................................................19

ARGUMENT ......................................................................................................19

I.    THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S
      SECURITIES ACT CLAIMS SOUND IN FRAUD ...................................22

      A.    The Complaint Is, at Its Core, Predicated on Fraud Allegations ........22
      B.    Plaintiff Alleges Fraud in the Securities Act Section of the
            Complaint ..............................................................................................25
      C.    Affirmance of the Rule 9(b) Standard Alone Warrants
            Affirmance.............................................................................................29

II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF
      FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENT OR
      OMISSION ...................................................................................................30

      A.    Plaintiff Fails to Plead a Materially False or Misleading
            Statement or Omission Regarding Illegal Advertisements.................31

      1.     Qutoutiao Clearly Disclosed Risks Associated with
Complying with Chinese Advertising Regulations ................31

      2.     Plaintiff Fails to Plead that a Substantial Portion of
Qutoutiao's Revenue Was Derived from Illegal
Advertisements ..........................................................................38

  B.    Plaintiff Fails to Plead a Materially False or Misleading
Statement or Omission Regarding Related-Party Transactions ..........47

      1.     Plaintiff Fails to Plead that the Dianguan Acquisition
Was a Related-Party Transaction ..............................................47

      2.     The Related-Party Transactions with Mengtui, Fangce,
and Shihui Miao Were Timely Disclosed ..................................51

III.   PLAINTIFF'S LACK OF STANDING IS ANOTHER BASIS FOR
AFFIRMING IN PART THE DISMISSAL OF HIS COMPLAINT ............53

IV.   THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN
DENYING LEAVE TO AMEND ..................................................................55

CONCLUSION ........................................................................................................56

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*4Fs Family, Inc. v. Lifchitz,*
No. 21-903CV, 2021 U.S. App. LEXIS 34569 (2d Cir. Nov. 22, 2021) ...................................................................................41

*Africa v. Jianpu Tech. Inc.,*
No. 21CV1419, 2022 U.S. Dist. LEXIS 176631 (S.D.N.Y. Sept. 28, 2022) ..................................................................................39

*Alix v. McKinsey & Co.,*
23 F.4th 196 (2d Cir. 2022) ...............................................................42

*Altayyar v. Etsy, Inc.,*
731 F. App'x 35 (2d Cir. 2018).........................................................55

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,*
28 F.4th 343 (2d Cir. 2022) ...............................................................20

*Asay v. Pinduoduo Inc.,*
No. 20–1423, 2021 U.S. App. LEXIS 26176 (2d Cir. Aug. 31, 2021) ............................................................................... 35, 37

*Ashcroft v. Iqbal,*
556 U.S. 662 (2009)...........................................................................20

*ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.,*
493 F.3d 87 (2d Cir. 2007) ................................................................20

*Attestor Value Master Fund v. Republic of Argentina,*
940 F.3d 825 (2d Cir. 2019) ..............................................................56

*Barnes v. Osofsky,*
373 F.2d 269 (2d Cir. 1967) ..............................................................53

*Barscz v. Dir., OWCP,*
486 F.3d 744 (2d Cir. 2007) ..............................................................32

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................20

*Bettis v. Se*,
   16CV00025, 2016 U.S. Dist. LEXIS 180079 (S.D.N.Y. Dec. 20,
   2016) ...............................................................................................44

*Caldwell v. Berlind*,
   543 F. App'x 37 (2d Cir. 2013) ......................................................41

*Chiarella v. U.S.*,
   445 U.S. 222 (1980) ........................................................................21

*Coronel v. Quanta Cap. Holdings Ltd.*,
   07CV1405, 2009 U.S. Dist. LEXIS 6633 (S.D.N.Y. Jan. 23, 2009) ...............30

*Demaria v. Andersen*,
   318 F.3d 170 (2d Cir. 2003) ...........................................................46

*ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan
   Chase Co.*,
   553 F.3d 187 (2d Cir. 2009) .................................................... 21, 50

*Garber v. Legg Mason Inc.*,
   347 F. App'x 665 (2d Cir. 2009) .....................................................40

*Garcia v. J2 Glob.*,
   No. 2:20CV06096, 2021 U.S. Dist. LEXIS 78853 (C.D. Cal. Mar.
   5, 2021) ............................................................................................50

*Geiger v. Solomon-Page Grp., Ltd.*,
   933 F. Supp. 1180 (S.D.N.Y. 1996) ................................................30

*Gen. Partner Glenn Tongue v. Sanofi*,
   816 F.3d 199 (2d Cir. 2016) ............................................................20

*Glazer v. Formica Corp.*,
   964 F.2d 149 (2d Cir. 1992) ............................................................21

*Hutchison v. Deutsche Bank Sec., Inc.*,
   647 F.3d 479 (2d Cir. 2011) ................................................. 6, 21, 40

*I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*,
   936 F.2d 759 (2d Cir. 1991) ........................................................ 31, 33

*IAM Nat'l Pension Fund v. Farfetch Ltd.*,
   No. 21-2752-cv, 2023 U.S. App. LEXIS 8543 (2d Cir. Apr. 11,
   2023) ...................................................................................................30

*In re Alcatel Sec. Litig.*,
   382 F. Supp. 2d 513 (S.D.N.Y. 2005) ...........................................28

*In re Coty Inc. Sec. Litig.*,
   No. 14CV919, 2016 U.S. Dist. LEXIS 41484 (S.D.N.Y. Mar. 29,
   2016) ...................................................................................................46

*In re FBR Inc. Sec. Litig.*,
   544 F. Supp. 2d 346 (S.D.N.Y. 2008) ...........................................21

*In re Francesca's Holdings Corp. Sec. Litig.*,
   No. 13CV6882, 2015 U.S. Dist. LEXIS 50726 (S.D.N.Y. Mar. 31,
   2015) ...................................................................................................50

*In re Gentiva Sec. Litig.*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................... 24, 28

*In re Hebron Tech. Co.*,
   No. 20CV4420, 2021 U.S. Dist. LEXIS 181162 (S.D.N.Y. Sept.
   22, 2021) ............................................................... 48, 49, 51, 52

*In re HEXO Corp. Sec. Litig.*,
   524 F. Supp. 3d 283 (S.D.N.Y. 2021) ............................ 24, 26, 53, 55

*In re JPMorgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) ...................................... 27, 28

*In re LendingClub Sec. Litig.*,
   254 F. Supp. 3d 1107 (N.D. Cal. 2017) ...........................................51

*In re Marsh & McLennan Cos., Inc. Sec. Lit.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...........................................27

*In re Micro Focus Int'l PLC Sec. Litig.*,
   No. 1:18CV06763, 2020 U.S. Dist. LEXIS 180621 (S.D.N.Y.
   Sept. 29, 2020) ..................................................................................43

*In re Morgan Stanley Info. Fund Sec. Litig.*,
592 F.3d 347 (2d Cir. 2010) ...............................................................21

*In re ProShares Tr. Sec. Litig.*,
728 F.3d 96 (2d Cir. 2013) ......................................................... 22, 37

*In re Qiwi plc Sec. Litig.*,
No. 20CV6054, 2023 U.S. Dist. LEXIS 197945 (E.D.N.Y. Nov. 3,
2023) ...................................................................................................39

*In re Qutoutiao, Inc., Sec. Litig.*,
No. 20CV6707 (SHS), 2023 U.S. Dist. LEXIS 136019 (S.D.N.Y.
Aug. 3, 2023) ...................................................................... passim

*In re Riskified Ltd. Sec. Litig.*,
No. 22CV3545, 2023 U.S. Dist. LEXIS 96389 (S.D.N.Y. June 2,
2023) ...................................................................................................35

*In re Telefonaktiebolaget LM Ericsson Sec. Litig.*,
No. 22CV1167, 2023 U.S. Dist. LEXIS 91038 (E.D.N.Y. May 24,
2023) ...................................................................................................33

*In re Tel-Save Sec. Litig.*,
No. 98CV3145, 1999 U.S. Dist. LEXIS 16800 (E.D. Pa. Oct. 19,
1999) ...................................................................................................51

*In re Ultrafem Inc. Sec. Litig.*,
91 F. Supp. 2d 678 (S.D.N.Y. 2000) ..................................................23

*Jiajia Luo v. Sogou, Inc.*,
465 F. Supp. 3d 393 (S.D.N.Y. 2020) ............................. 32, 33, 34, 46

*Kim v. Kimm*,
884 F.3d 98 (2d Cir. 2018) .......................................................... 19, 55

*Kleinman v. Elan Corp.*,
706 F.3d 145 (2d Cir. 2013) ...............................................................22

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
No. 07CV0976, 2008 U.S. Dist. LEXIS 76670 (S.D.N.Y. Sept. 30,
2008) ..................................................................... 22, 23, 24, 29

*Langan v. Johnson & Johnson Consumer Companies, Inc.*,
   897 F.3d 88 (2d Cir. 2018) ............................................................... 54, 55

*Lau v. Opera Ltd.*,
   527 F. Supp. 3d 537 (S.D.N.Y. 2021) ......................................... 53, 55

*Lentell v. Merrill Lynch & Co.*,
   396 F.3d 161 (2d Cir. 2005) ......................................................... 19, 20

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   144 S. Ct. 479 (2023)...........................................................................44

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
   No. 22-1165, 2023 WL 3778765 (May 30, 2023)..............................44

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011).......................................................................... 42, 43

*Millares Guiraldes de Tineo v. United States*,
   137 F.3d 715 (2d Cir. 1998) ..............................................................19

*New England Carpenters Guaranteed Annuity & Pension Funds v.
   DeCarlo*,
   80 F.4th 158 (2d Cir. 2023) ...............................................................55

*Olkey v. Hyperion 1999 Term Trust, Inc.*,
   98 F.3d 2 (2d Cir. 1996) ......................................................................33

*Panther Partners Inc. v. Ikanos Commc'ns, Inc.*,
   681 F.3d 114 (2d Cir. 2012) ...............................................................43

*Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc.*,
   No. 16CV3068, 2017 U.S. Dist. LEXIS 221703 (S.D.N.Y. Aug.
   24, 2017) ...............................................................................................30

*Porat v. Lincoln Towers Cmty. Ass'n*,
   464 F.3d 274 (2d Cir. 2006) ...............................................................55

*Qi Mi v. Waterdrop Inc.*,
   No. 23–301, 2024 U.S. App. LEXIS 961 (2d Cir. Jan. 16, 2024).....................35

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ..................................................... passim

*Sandoz v. Waterdrop Inc.*,
No. 21CV7683, 2023 U.S. Dist. LEXIS 18745 (S.D.N.Y. Feb. 3,
2023) .....................................................................................................35

*Schiro v. Cemex*,
396 F. Supp. 3d 283 (S.D.N.Y. 2019) .................................................39

*Scott v. GM Co.*,
46 F. Supp. 3d 387 (S.D.N.Y. 2014), *aff'd,* 605 F. App'x 52 (2d
Cir. 2015) ..............................................................................................45

*Slack Techs., LLC v. Pirani*,
598 U.S. 759 (2023)....................................................................... 53, 55

*Snellink v. Gulf Res., Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) .................................................50

*Stadnick v. Vivint Solar, Inc.*,
No. 14CV9283, 2015 U.S. Dist. LEXIS 166008 (S.D.N.Y. Dec.
10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017) ......................................54

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ...................................................................6

*Tabak v. Canadian Solar Inc.*,
549 F. App'x 24 (2d Cir. 2013) ...........................................................40

*Turner Ins. Agency, Inc. v. Farmland Partners Inc.*,
No. 18CV02104, 2019 U.S. Dist. LEXIS 103526 (D. Colo. June
18, 2019) ........................................................................................ 50, 51

*U.S. v. Morgan*,
380 F.3d 698 (2d Cir. 2004) .................................................................20

*United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med.
Response, Inc.*,
865 F.3d 71 (2d Cir. 2017) ...................................................................41

*United States v. Strock*,
No. 15CV0887, 2021 U.S. Dist. LEXIS 54910 (W.D.N.Y. Mar. 23,
2021) .....................................................................................................42

*Zellner v. Citigroup Glob. Mkt. Holdings Inc.*,
    No. 21CV2413 2022 U.S. Dist. LEXIS 170804 (S.D.N.Y. Sept. 21,
    2022) ................................................................................................................31

*Zirkin v. Quanta Cap. Holdings Ltd.*,
    07CV851, 2009 U.S. Dist. LEXIS 4667 (S.D.N.Y. Jan. 22, 2009) ...................28

**Rules**

Fed. R. Civ. P. 12(b)(6)...................................................................................... 12, 33

Fed. R. Civ. P. 8 ............................................................................................... passim

Fed. R. Civ. P. 9(b) ........................................................................................... passim

# INTRODUCTION[1]

The U.S. District Court for the Southern District of New York correctly dismissed the Complaint, which asserted—as relevant to this appeal—claims under the Securities Act of 1933 related to Qutoutiao's September 2018 initial public offering ("IPO") and April 2019 secondary public offering ("SPO"). This Court should affirm.

Qutoutiao is a Chinese company that delivers customized feeds of articles and videos to mobile users. The Company derives its revenues primarily through the more than 2 billion advertisements placed per day on its applications. Qutoutiao operates in a fast-evolving sector that faces significant uncertainties with regard to China's amorphous and subjective advertisement regulations. The Company candidly warned investors that it was unable to assure compliance with those regulations, which could result in fines, and removal of its applications from app stores. These fully-disclosed risks materialized in July 2020 when a Chinese state-controlled broadcaster reported a small number of suspected illegal advertisements found on Qutoutiao's application. Subsequently, Qutoutiao's

---

[1] References to Plaintiff's Appendix, Plaintiff's Special Appendix, and Qutoutiao's Supplemental Appendix herein are denoted with the abbreviations "A-", "SPA-" and "SA-" respectively. Unless otherwise noted, all emphasis has been added, and internal citations have been omitted. Citations to "¶" refer to Plaintiff's Consolidated Amended Class Action Complaint (the "Complaint"), and capitalized terms not defined herein have the meaning ascribed in Appellant's Opening Brief ("Br.").

flagship application was temporarily removed from app stores, which negatively affected its financial results.

In the wake of this publicity, Plaintiff brought claims under the Securities Act of 1933 (the "Securities Act" or "1933 Act") and Securities Exchange Act of 1934 (the "Exchange Act" or "1934 Act"), which Judge Sidney H. Stein dismissed in a thorough and well-reasoned opinion. Plaintiff now challenges the dismissal only of its Securities Act claims brought under §§ 11, 12(a)(2) and 15.

At core, Plaintiff's Complaint is premised on allegations of fraud. Thus, the District Court properly held that the Securities Act claims sound in fraud and are subject to heightened pleading standards. Plaintiff does not appeal the District Court's ruling that the Complaint failed to plead the Exchange Act claims with the specificity required by Fed. R. Civ. P. 9(b) ("Rule 9(b)"). Plaintiff also concedes the Securities Act and Exchange Act claims are based on the same alleged omissions. As a result, Plaintiff likewise cannot plead the substantively identical Securities Act claims with the requisite particularity should it be subject to the heightened pleading standard.

Even under the Fed. R. Civ. P. 8 ("Rule 8") pleading standard, Plaintiff failed to state a claim for the three categories of allegedly false statements he raises on appeal. Br. 17–18.

*First*, Plaintiff alleges that the offering documents created a false impression that Qutoutiao had effective measures to screen out illegal advertisements, but that such measures were actually ineffective and failed to comply with Chinese regulations. The offering documents explicitly stated, however, that Qutoutiao "cannot assure [investors] that all the advertisements shown on [its] mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations." A-291. The District Court correctly held that these disclosures warned investors of the possible existence of illegal advertisements on Qutoutiao's platforms. Given that Qutoutiao disclosed the very risk Plaintiff claims was covered up, this allegation fails.

*Second*, Plaintiff alleges Qutoutiao failed to disclose that a substantial portion of its revenues came from illegal advertisements. The District Court correctly held, however, that Plaintiff failed to provide *any* factual allegations regarding the amount of illegal advertisements on Qutoutiao's platforms or how much of Qutuotiao's revenues were derived from such advertisements, rendering the claim wholly conclusory. In particular, Plaintiff fails to plead any facts supporting a plausible inference about the presence or magnitude of illegal advertisements on Qutoutiao's platforms *at the time* of the IPO or SPO. Thus, Plaintiff fails to allege any contemporaneous falsity in Qutoutiao's offering documents regarding illegal advertisements.

*Third*, the Complaint alleges that Qutoutiao's (1) acquisition of Shanghai Dianguan Internet Technology Co., Ltd. ("Dianguan") and (2) transactions with three of its advertising customers—Mengtui, Fangce, and Shihui Miao—were undisclosed related-party transactions. The District Court correctly held, however, that Qutoutiao timely disclosed any related-party transactions.

*Finally*, dismissal can be affirmed in part on the independent ground that Plaintiff lacked statutory standing to assert a Section 11 claim for the SPO or a Section 12(a)(2) claim for either offering. The named Plaintiff purchased all his Qutoutiao shares months before the SPO, and therefore cannot carry his burden under Section 11 to "trace" his shares to the SPO. Plaintiff also conceded he did not purchase Qutoutiao shares directly from Qutoutiao or the UW Defendants, and thus cannot establish Section 12(a)(2) standing as a matter of law.

## STATEMENT OF THE ISSUES

1.　　Whether the District Court correctly held that the Complaint's Securities Act claims sound in fraud and thus are subject to heightened pleading standards.

2.　　Whether the District Court correctly dismissed Plaintiff's Securities Act claims regarding illegal advertisements where (i) Qutoutiao disclosed the risks associated with complying with Chinese advertising regulations and (ii) Plaintiff does not allege facts showing that a substantial portion of Qutoutiao's revenue was

derived from illegal advertisements at the time of the challenged offering documents.

3.     Whether the District Court correctly held that Plaintiff fails to plead a Securities Act claim regarding related-party transaction disclosures because (i) the acquisition of Dianguan was not a related-party transaction and (ii) all actual related-party transactions were timely disclosed.

4.     Whether the District Court erred in holding that Plaintiff had standing to assert a Section 11 claim for the SPO and a Section 12(a)(2) claim where Plaintiff cannot trace his purchased shares to the SPO, and did not buy shares in the IPO or SPO directly from Qutoutiao or the UW Defendants.

5.     Whether the District Court acted within its discretion in denying leave to amend the Complaint where Plaintiff did not state how he would cure the Complaint's defects and any amendment would be futile.

## STATEMENT OF THE CASE

### I.     Factual Background

#### A.     Qutoutiao and Its Stock Offerings

Qutoutiao is a leading operator of mobile content platforms in the People's Republic of China ("PRC").  A-266–67.[2]  Launched in June 2016, its "eponymous

---

[2]     All facts set forth herein are drawn from the Complaint, materials incorporated by reference therein, or publicly available documents subject to judicial notice.  Matters properly considered at the pleading stage include the facts alleged in the complaint, "any written instrument attached to the complaint,

flagship mobile application, *Qutoutiao*, meaning 'fun headlines' in Chinese, applies artificial intelligence-based algorithms to deliver customized feeds of articles and short videos to users based on their unique profiles, interests and behaviors." *Id*.[3] On average, at the time of the District Court briefing, more than 120 million users spent time on *Qutoutiao* and Qutoutiao's other mobile applications in a given month (monthly-active users or "MAUs"), and more than 30 million on a given day (daily-active users or "DAUs"). SA-6.

Since its inception, Qutoutiao has "strategically targeted users from lower-tier cities in China,"[4] an "underserved market" with "significant need for mobile entertainment," and "high monetization potentials." A-267–68; A-283. The Company believes that "mobile users in lower-tier cities tend to have a slower pace of life," "spend more time on the Internet given limited offline entertainment

---

statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." *Hutchison v. Deutsche Bank Sec., Inc*., 647 F.3d 479, 481 (2d Cir. 2011). Courts are permitted to take judicial notice of media reports for the fact of their publication. *Staehr v. Hartford Fin. Servs. Grp., Inc.,* 547 F.3d 406, 424–26 (2d Cir. 2008). Plaintiff does not take issue on appeal with any documents cited by Qutoutiao at the District Court level, and Qutoutiao cites to no new documents here.

[3]     Consistent with Qutoutiao's public filings, its eponymous application is italicized herein to distinguish it from the corporate entity.

[4]     "Lower-tier cities" refers to cities in China other than the 36 "tier-1" and "tier-2" cities. A-264.

venues," and "enjoy rapidly growing disposable income[.]". *Id. Qutoutiao's* content is designed to resonate with these users, who "tend to have different interests and preferences in comparison to users from tier-1 and tier-2 cities," and the application attracted a large group of loyal users from the lower-tier cities. *Id*.

Qutoutiao completed its IPO in September 2018, with its American depositary shares ("ADSs") traded on NASDAQ. ¶¶ 62, 304. In April 2019, Qutoutiao closed a SPO of its ADSs. ¶ 64.

## B. Qutoutiao's Advertising Business

Qutoutiao generates revenue "primarily by providing advertising and marketing services." A-268; A-301. Qutoutiao places more than 2 billion advertisements every day on its applications. SA-29. The Company focuses on performance-based advertisements and charges mainly on an optimized cost-per-click basis. A-277. As such, Qutoutiao generates more revenue when more users click on the advertisements. User engagement, often measured by MAUs and DAUs, therefore impacts Qutoutiao's revenues. A-274.

When Qutoutiao first started its advertisement business, it primarily relied on third-party advertising platforms to sell its advertising spaces. *See* A-287. In particular, Baidu, another Chinese internet company, helped Qutoutiao sell a large volume of advertisements in 2016 and 2017. *See* A-289. As the business grew, Qutoutiao became interested in operating its own advertising platform, which

would enhance its "monetization efficiency" and allow the "business to become independent and obtain long-term viability."  A-272–73.

In February 2018, Qutoutiao acquired Dianguan, an advertising agent it was already working with, for RMB 15 million (approximately USD 2.3 million).  *Id*.; A-266–67; 314.  Qutoutiao combined Dianguan's existing technology and its own resources into an in-house advertising platform and reduced its reliance on third-party platforms, although it continued to work with such platforms including Baidu.  A-272–73; 277; 289.

## C.    PRC Advertising Regulations

As disclosed in the offering documents, Qutoutiao's advertisement business is heavily regulated.  Under PRC law and regulations, the Company is "obligated to monitor the advertising content shown on [its] mobile applications to ensure that such content is true, accurate and in full compliance with applicable laws and regulations."  A-290–91.  Qutoutiao disclosed that "[v]iolation of these laws and regulations may subject [Qutoutiao] to penalties, including fines, confiscation of [its] advertising income, orders to cease dissemination of the advertisements and orders to eliminate the effect of illegal advertisement[s]."  *Id*.  Regulators "may even force [Qutoutiao] to terminate [its] advertising operation[.]"  *Id.*

Ensuring that billions of advertisements placed on Qutoutiao's applications each day are "true, accurate and in full compliance" is a challenging task.  In

particular, "for the determination of the truth and accuracy of the advertisements, there are no implementing rules or official interpretations, and such a determination is at the sole discretion of the relevant local branch of [government] . . . , which results in uncertainty in the application of these laws and regulations." *Id*. Indeed, the PRC government can impose penalties for any advertisements it deems "obscene, defamatory, inappropriately satirical or otherwise inappropriate[.]" *Id.* Qutoutiao also warned that unscrupulous "advertisers on [Qutoutiao's] mobile applications . . . may use measures that are designed to evade [Qutoutiao's] monitoring[.]" *Id*. Moreover, Qutoutiao's "employees responsible for reviewing advertisements may not fully understand the relevant laws and regulations or may be inappropriately influenced by the advertisers." *Id*.

It is thus hardly a surprise that illegal advertisements have reportedly appeared on Qutoutiao's platforms. Qutoutiao candidly acknowledged the challenges beginning with its IPO offering documents, warning that it "cannot assure [investors] that all the advertisements shown on [its] mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations." *Id*.

### D.   Qutoutiao's Strategy Shift in 2020

Like many young, high-growth companies, Qutoutiao struggled to achieve profitability. ¶ 94. In 2020, Qutoutiao made the strategic decision to "balance . . .

growth and profitability," aiming to break even on a non-GAAP basis[5] by year-end. SA-40–41; SA-63; *see also* SA-50 (noting that "growth is not an end in itself"); SA-62 ("Our focus for the year continues to be on the underlying profitability of the business."). To increase profitability, Qutoutiao "operate[d] on a smaller sales and marketing budget," SA-71, "which de-emphasized short-term user and revenue growth." SA-40. Qutoutiao successfully executed this strategy. As shown below, throughout 2020 Qutoutiao's revenue growth trended down while its profit trended up.[6] Qutoutiao achieved its goal of breakeven by Q4 2020. SA-6.



### E. CCTV Report

On July 16, 2020, China Central Television ("CCTV") reported that certain advertisements placed by third-party advertising agents on *Qutoutiao* exaggerated

---

5  Non–GAAP profit does not include share-based compensation expenses, which could distort underlying business trends. SA-11.

6  SA-79–80; SA-97; SA-113; SA-6.

the health benefits of food and diet products, and promoted activities that may involve online gambling (the "CCTV Report").  SA-100; ¶ 88.

In the wake of the CCTV Report, *Qutoutiao* was allegedly temporarily (i) removed from several Android-based app stores in China and (ii) unavailable for download at the Apple App store.  *Id*.  The removal reduced the application's MAUs, DAUs, and user time spent.  SA-113.  Because most of Qutoutiao's advertisements are performance-based, that reduction in user activities adversely affected revenue.  *See id*.; SA-66.

The CCTV Report implicated only a small number of advertisements.  ¶ 88. Qutoutiao, however, was "cautious" and "took extraordinary measures" for remediation to avoid any risk of further reputational harm.  SA-74.  In light of the vague, subjective nature of the regulations, *see* A-291, Qutoutiao "went above and beyond . . . the laws and regulations, as well as industry practice" in identifying advertisements that may be viewed as "misleading or inappropriate."  SA-71, 74.

The combination of these factors—*Qutoutiao's* temporary removal from the app stores, Qutoutiao's remedial measures, and its strategic focus on profitability over growth—led to a year-over-year revenue decline in Q3 2020.  SA-113; SA-74.  Nevertheless, Q3 2020 revenues were still within Qutoutiao's guidance range, SA-113, and its profit margin was at a post-IPO historic high, SA-64.

## II.    **Procedural Background**

### A.    **Case History**

In August 2020, Steven Burnham filed a class action complaint against Qutoutiao and other defendants in the United States District Court for the Southern District of New York.  A-57.  In September 2020, Howard Brown filed a similar suit.  *Id.*  James Pappas and other members of the putative class moved to consolidate the two cases.  A-56.

This motion was granted and Mr. Pappas was appointed lead plaintiff on November 4, 2020.  A-56, A-60.  On January 15, 2021, Plaintiff filed the Complaint.  A-61–223.

### B.    **Plaintiff's Allegations**

The Complaint alleged certain Securities Act and Exchange Act violations against Qutoutiao, the Individual Defendants, and the UW Defendants.  A-61–223; Br. at 2.  Qutoutiao moved to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6), and the District Court dismissed the case in its entirety.  *In re Qutoutiao, Inc., Sec. Litig.*, No. 20CV6707 (SHS), 2023 U.S. Dist. LEXIS 136019 (S.D.N.Y. Aug. 3, 2023).

Plaintiff appeals only the dismissal of the Securities Act claims brought against Qutoutiao, the Director Defendants, and the UW Defendants.  Br. at 2; ¶ 314.  On appeal, Plaintiff focuses on three "categories of alleged falsity" in the offering documents.  Br. at 17–18.

*First*, Plaintiff claims "that Defendants' statements and omissions created the false impression that QTT had effective measures to screen out illegal advertisements" but that in reality the "measures were completely ineffective." *Id*. at 17.

*Second*, Plaintiff claims that Qutoutiao "failed to disclose that a substantial portion of QTT's 'rapidly' increasing revenue came from illegal advertisements." *Id*. at 17–18.

*Third*, Plaintiff claims that Qutoutiao's "1) acquisition of Dianguan and 2) transactions with Mengtui, Fangce, and Shihui Miao were non-disclosed related-party transactions." *Id*. at 18. Plaintiff alleges that the Dianguan acquisition was a related-party transaction because Eric Tan (Qutoutiao's CEO) and Xiang Liang (founder of Dianguan) had a close business relationship that enabled Qutoutiao to significantly influence Dianguan. ¶¶ 107–111. And Plaintiff alleges the related-party transactions with Mengtui, Fangce, and Shihui Miao were disclosed, but belatedly. Br. at 18.

## C.    The District Court Opinion

The District Court dismissed the Complaint in its entirety for failure to state a claim. The District Court held that Plaintiff's "Securities Act claims sound in fraud" and "are subject to the heightened pleading standard of Rule 9(b)[,]" as the claims use language "classically associated with fraud." SPA-0017–18. The

District Court explicitly dispatched each of the three claims Plaintiff raises on appeal, and found that Plaintiff failed to plead "that defendants made misstatements or omissions of material fact" in the offering documents. SPA-0006.

*First*, the District Court held that Qutoutiao "repeatedly disclosed the risk that unlawful advertisements could appear on its platform" and the "disclosure documents leave no doubt that investors were warned of the risks" associated with the presence of illegal advertisements on *Qutoutiao*. SPA-0010.

*Second*, the District Court held that the "Complaint's factual assertions do not offer any indication as to the magnitude of the allegedly illicit advertising activity" and do not allege "even approximately, how many of QTT's customers were unqualified advertisers or what portion of QTT's revenues were derived from such advertisers." SPA-0008.

*Third*, the District Court held that Qutoutiao's acquisition of Dianguan was not a related-party transaction, holding that Plaintiff merely "demonstrated a likelihood that 'Liang had a close business relationship with Defendant Tan'" but the "simple presence of a business relationship . . . is insufficient to trigger a duty to disclose" the existence of any related-party transaction. SPA-0013. Further, Qutoutiao disclosed the "transactions with Mengtui, Fangce, and Shihui Miao [as]

related-party transactions" in "the first annual report after these alleged related-party transactions took place," fulfilling Qutoutiao's disclosure obligations. *Id.*

Finally, however, the District Court held that Plaintiff had standing to assert these claims even though Plaintiff did not buy shares in the IPO or SPO directly from Defendants, and cannot trace his purchased shares to the SPO. SPA-0017–18.

## SUMMARY OF ARGUMENT

### Applicable Pleading Standard

The Complaint is premised on allegations of fraud; the heightened pleading standard of Rule 9(b) thus applies. The Complaint refers to the "fraud set forth in the Company's Offering Documents" (SPA-0017) in a section prior to any breakdown between the Securities Act and Exchange Act claims, tainting the Complaint as a whole with allegations of fraud. Further, the Complaint refers to Qutoutiao's "purposeful" or "intentional" acts, and allegations of purposeful misrepresentations sound in fraud. Plaintiff argues that—for the Securities Act claims—he removed the fraud-based allegations and disclaimed fraud. But such attempts fail where, as here, the Securities Act claims parrot the Exchange Act

claims. Critically, the District Court also correctly held that the Securities Act section of the Complaint itself sounds in fraud.

As Plaintiff concedes he cannot plead the Exchange Act claims with the requisite particularity required under Rule 9(b), Plaintiff's substantively identical Securities Act claims must also fail. Even under the Rule 8 pleading standard, Plaintiff's three claims fail as a matter of law.

## Illegal Advertisement Claims

Qutoutiao's offering documents repeatedly disclosed that Qutoutiao could not assure investors that it complied with Chinese advertising regulations. In response, Plaintiff points to two isolated statements made by Qutoutiao, but this cherry-picking approach inappropriately ignores the extensive disclosures about the risks of illegal advertisements made throughout the offering documents. The first statement Plaintiff challenges is Qutoutiao's statement that it uses "artificial intelligence" to screen out "objectionable visual content with a high degree of accuracy." However, the District Court correctly held that this disclosure appears in a section about compliance with *content* regulations, not a preceding section about *advertising* regulations, and is irrelevant to Plaintiff's case. The second statement was made in an earnings call that post-dated the IPO and SPO, and cannot form the basis of a Securities Act claim.

Plaintiff's assertion that Qutoutiao failed to disclose a substantial portion of its revenues came from illegal advertisements is conclusory. Plaintiff fails to plead any estimate regarding the actual magnitude of illegal advertisements on Qutoutiao's platforms. Plaintiff's claim that Qutoutiao must disclose that illegal advertisements contributed to its revenues because Qutoutiao put the "reasons for its success at issue" fails for the same reason—there is no such duty where, as here, Plaintiff offers no well-pleaded allegations that the illegal advertisements played a material role in Qutoutiao's success.

Plaintiff's counter-arguments are also flawed. *First*, Plaintiff argues he has no obligation to plead the magnitude of illegal advertisements; however, this flies in the face of extensive Second Circuit guidance that merely alleging an issue is substantial without accompanying detail about the actual magnitude is insufficient to state a Securities Act claim. *Second*, Plaintiff argues Qutoutiao failed to disclose that the acquisition of Dianguan "rendered the presence of illegal ads even more likely" as it reduced Baidu's oversight over the illegal advertisements. However, there are no well-pleaded allegations showing how Baidu provided stricter oversight or that the Dianguan acquisition caused Qutoutiao to place more illegal advertisements at any point in time. Moreover, this allegation fails to provide any factual support as to the actual amount of illegal advertisements on *Qutoutiao*. *Finally*, Plaintiff alleges the Q3 2020 revenue drop is attributable to the

presence of illegal advertisements, but this drop cannot be used to plead the magnitude of illegal advertisements *at the time* of the IPO or SPO, both of which took place more than a year before.

**Related-Party Transaction Claims**

Plaintiff fails to allege that Eric Tan could significantly influence Xiang Liang's management of Dianguan. In-circuit guidance is clear that Plaintiff's allegation about Liang's employment at two different Tan-controlled companies cannot plead Tan's or Qutoutiao's control over Dianguan, an unrelated third company. Furthermore, Qutoutiao is only required to disclose *material* related-party transactions, which the Dianguan acquisition indisputably was not.

Qutoutiao also timely disclosed its related-party transactions with Mengtui, Fangce, and Shihui Miao. Plaintiff's argument that he alleges these transactions began prior to the September 2018 IPO fails, as the Complaint relies entirely on a survey done by a short seller on September 12, *2019* for the existence of these transactions.

**Standing**

Plaintiff lacks standing to raise (i) a Section 11 claim for the SPO because he purchased all his shares before the SPO and therefore cannot trace them to the SPO, and (ii) a Section 12(a)(2) claim because he admits that he did not buy shares in the IPO or SPO directly from Qutoutiao or the UW Defendants.

**Denial of Leave to Amend**

The District Court did not abuse its discretion in denying leave to amend because Plaintiff offered no explanation for how he would be able to cure the Complaint's defects. While Plaintiff now belatedly offers a further amended Complaint attempting to remove fraud-based allegations, such amendment is futile because Plaintiff's claims fail under the Rule 8 pleading standard.

## STANDARD OF REVIEW

This Court "review[s] *de novo* a district court's dismissal of a complaint for failure to state a claim." *Lentell v. Merrill Lynch & Co*., 396 F.3d 161, 167 (2d Cir. 2005). This Court "review[s] the district court's denial of leave to amend for abuse of discretion." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018). Affirmance may be on any grounds "supported by the record, whether it was ignored by the court below or flatly rejected[.]" *Millares Guiraldes de Tineo v. United States,* 137 F.3d 715, 719 (2d Cir. 1998).

## ARGUMENT

The Rule 9(b) pleading standard applies to Securities Act claims where, as here, "the claims are premised on allegations of fraud." *Rombach v. Chang,* 355 F.3d 164, 171 (2d Cir. 2004). Under Rule 9(b) "a party must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b). Plaintiff must "(1) specify the statements that the plaintiff contends were fraudulent, (2)

identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir. 2007).

Even under Rule 8's pleading standard for claims that do not allege fraud, courts must dismiss complaints where, as here, Plaintiff fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Since Plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

While "reasonable inferences are drawn in the plaintiff's favor on a motion to dismiss on the pleadings, 'conclusions of law or unwarranted deductions of fact are not admitted.'" *Lentell*, 396 F.3d at 174–75; *Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.,* 28 F.4th 343, 353 (2d Cir. 2022) ("Allegations that are conclusory or unsupported by factual assertions are insufficient.").

Further, "[w]here a document is referenced in a complaint, 'the documents control and this Court need not accept as true the allegations in the amended complaint.'" *Gen. Partner Glenn Tongue v. Sanofi*, 816 F.3d 199, 206 n.6 (2d Cir. 2016). And appellate courts "are entitled to affirm the judgment of the district court on any ground with support in the record, even one raised for the first time on appeal." *U.S. v. Morgan*, 380 F.3d 698, 701 n.2 (2d Cir. 2004).

The District Court correctly held that Plaintiff fails to state a claim under §§ 11, 12(a)(2), or 15 of the Securities Act. To plead a Section 11 claim, Plaintiff must allege that a registration statement contains "(1) a material misrepresentation; (2) a material omission in contravention of an affirmative legal disclosure obligation; or (3) a material omission of information that is necessary to prevent existing disclosures from being misleading." *Hutchison,* 647 F.3d at 484.

"Similarly, Section 12(a)(2) imposes liability on the issuer or seller of securities if the securities were sold using a prospectus that contained a material misstatement or omission." *Id.* A Section 15 claim requires a viable pleading of a primary violation of the Securities Act. *ECA & Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co*., 553 F.3d 187, 207 (2d Cir. 2009).

For allegations of securities fraud "based upon nondisclosure, there can be no fraud absent a duty to speak." *In re FBR Inc. Sec. Litig*., 544 F. Supp. 2d 346, 353 (S.D.N.Y. 2008) (quoting *Chiarella v. U.S*., 445 U.S. 222, 234–35 (1980)). A "corporation is not required to disclose a fact merely because a reasonable investor would very much like to know that fact." *In re Morgan Stanley Info. Fund Sec. Litig*., 592 F.3d 347, 366 (2d Cir. 2010). Indeed, a "corporation does not have a duty to disclose information simply because it is material[.]" *FBR,* 544 F. Supp. 2d at 353 (citing *Glazer v. Formica Corp.,* 964 F.2d 149, 156 (2d Cir. 1992)).

Allegedly omitted facts must be "necessarily inconsistent with the Prospectus statements" for a material misrepresentation to exist. *See Ladmen Partners, Inc. v. Globalstar, Inc.,* No. 07CV0976, 2008 U.S. Dist. LEXIS 76670, at *51 n.16 (S.D.N.Y. Sept. 30, 2008); *see Kleinman v. Elan Corp.*, 706 F.3d 145, 155 (2d Cir. 2013) (omission must be "at odds with the statement[s]" made by the company). When "a registration statement warns of the exact risk that later materialized, a [s]ection 11 claim will not lie as a matter of law." *In re ProShares Tr. Sec. Litig.*, 728 F.3d 96, 102–03 (2d Cir. 2013). A prospectus must be "read [] as a whole . . . cover-to-cover" to determine whether "the disclosures and representations, 'taken together and in context, would have misl[ed] a reasonable investor about the nature of the [securities].'" *Id*.

## I.     THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF'S SECURITIES ACT CLAIMS SOUND IN FRAUD

### A.     The Complaint Is, at Its Core, Predicated on Fraud Allegations

The District Court correctly held that the Complaint's "Securities Act arguments manifestly sound in fraud" and "therefore are subject to the heightened pleading standard of Rule 9(b)[.]". SPA-0016–18. Plaintiff challenges the District Court's holding, claiming that he does not explicitly "allege fraud" in the Securities Act section of the Complaint. Br. at 20. This argument fails as a matter of law.

Securities Act claims are subject to Rule 9(b) where the claim is "grounded in fraud." *Rombach*, 355 F.3d at 171. The "ultimate question is whether, ***at its core***, the complaint is predicated on allegations of fraudulent conduct." *Ladmen*, 2008 U.S. Dist. LEXIS 76670, at *32. The District Court correctly ruled that the Complaint is, at its core, grounded in fraud because in "an early section of the Complaint labeled 'Defendant[]s['] Illegal Acts,' which comes before any breakdown between the 1934 Exchange Act claims and 1933 Securities Act claims, Lead Plaintiff refers to the '***fraud set forth in the Company's Offering Documents***[.]'" SPA-0017.[7] The reference to the "Illegal Acts" and "fraud" prior to the "1933 Act Claims" section sets the stage that the theme of the Complaint sounds in fraud. *See In re Ultrafem Inc. Sec. Litig.*, 91 F. Supp. 2d 678, 690–91 (S.D.N.Y. 2000) (Securities Act claims sound in fraud where Plaintiffs allege a "theme" regarding a "fraudulent scheme" which "permeate[s] the Complaint.").

Indeed, "allegations of knowing and deliberate misrepresentations fundamentally sound in fraud" and the Complaint is peppered with allegations about Qutoutiao's purposeful misrepresentations. *Ladmen*, 2008 U.S. Dist. LEXIS

---

[7]     Plaintiff's argument that certain sections of the Complaint raising fraud-based allegations "were not incorporated by reference in the 1933 Act claims" is unavailing. Br. at 24-25. As discussed *infra*, such disclaimers of fraud are ineffective, and attempts to sanitize the Securities Act claims of fraud through separating sections is insufficient.

76670, at *38. For example, the Complaint—in Section I, a "Summary of the Action" overall—claims that Defendants' "improper conduct was ***purposeful***, not a mistake." ¶ 12. Further, the "Defendants' Illegal Acts" section explicitly states that Plaintiff's claims are based on Qutoutiao's purported "***intentional*** placement of . . . illegal advertisements." ¶ 79. Where, as here, the conduct allegations in the Complaint were "interwoven with suggestions that [defendant] deliberately turned a blind eye to known deficiencies," all claims based on such allegations sound in fraud. *Ladmen*, 2008 U.S. Dist. LEXIS 76670, at *37–38.

Because the fraud allegations form the overall basis of the Complaint, Plaintiff's argument that he segregated the Securities Act claims does not protect them from Rule 9(b). Section 11 claims sound in fraud even where "the complaint [] contain[s] certain separate factual allegations pertaining only to the Securities Act Claims, which are structurally separate from the rest of the complaint" if the Section 11 allegations "largely parrot the fraud allegations." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 393–94 (E.D.N.Y. 2013); *In re HEXO Corp. Sec. Litig.,* 524 F. Supp. 3d 283, 299 n.17 (S.D.N.Y. 2021) (Securities Act claims sound in fraud despite the fact that "plaintiffs separate[d] their claims under the Securities Act and the Exchange Act" because "their claims rest on the same theory").

Notably, the Addendum to Plaintiff's brief, a redlined Complaint prepared specially for appeal that strikes all allegations "not incorporated in the 1933 Act

claims" (Br. at 2 n.4), confirms that those claims sound in fraud. Even in seeking

to revive his Securities Act claims on appeal, Plaintiff stands on allegations that all

Defendants "*duped* investors into believing that QTT had come up with a genius

business model," while concealing Qutoutiao's intentional business decisions to

profit from illegal advertising: Qutoutiao (i) was "*skirting* Chinese government-

imposed regulations"; (ii) "was *actively integrating* noncompliant advertising

content, and the accompanying revenue streams, into its business"; and (iii)

"*targeted*" consumers in smaller cities that "were not subject to the same

regulatory scrutiny" as larger cities. Add. 0057–0058.[8] These allegations depict

fraud, not negligence.

### B. Plaintiff Alleges Fraud in the Securities Act Section of the Complaint

As the District Court found, the Securities Act claims section of the

Complaint itself alleges knowing misrepresentations that "simply do not sound in

negligence." SPA-0017 (observing that the "language used throughout the 1933

Securities Act section of the Complaint in many instances mirrors exactly the

language used throughout the section on the 1934 Exchange Act claims."). Given

that the Securities Act specific allegations are "premised on allegations of fraud[,]"

---

[8]     Citations to "Add." refer to the Addendum submitted with Plaintiff's Br.

"the heightened pleading standard of Rule 9(b) applies to [the] Section 11 and Section 12(a)(2) claims[.]"  *See Rombach*, 355 F.3d at 171.

The District Court's finding has ample support in the Securities Act section's allegations that Qutoutiao misstated its own knowing, deliberate actions, as opposed to negligently failing to uncover some contrary fact.  *See HEXO*, 524 F. Supp. 3d at 299 n.17 (Securities Act claim sounds in fraud where complaint alleged defendants knew but failed to disclose facts in offering documents).  For example, the Securities Act section of the Complaint alleges that Qutoutiao "material[ly] misstate[d] . . . the Company's *strategy* of targeting users in lower tier cities in China[.]"  ¶ 321.  According to Plaintiff, although Qutoutiao publicly stated that the strategy was designed to better serve the high number of users in those cities who have more free time and increasing disposable income, unbeknownst to investors, the true purpose of the strategy was "to run non-compliant ads in those cities because regulators were more lenient and users were less aware of their rights[.]"  ¶¶ 321–22.  A company's "strategy," as well as reasons behind a strategy, necessarily pertains to intentional conduct that it has knowledge of.  Plaintiff's claim that Qutoutiao misrepresented the true reasons behind its strategy sounds in fraud. [9]

---

[9]  Plaintiff appears to argue that their claim relating to Qutoutiao's strategy does not sound in fraud because the challenged disclosure language is taken from

Similarly, Plaintiff claims—in the Securities Act section of the Complaint—that Qutoutiao made misleading statements in the offering documents by not "disclosing that the Company was *seeking to avoid* the oversight [a separate company] had been providing which had prevented non-compliant ads from running" and also failed to disclose "that it *set up separate teams* with different processes and procedures for qualified versus unqualified advertisers *in order to sell* non-compliant and illegal ads." ¶ 324. The District Court correctly recognized that the Complaint's language about seeking to avoid oversight or setting up different procedures to sell illegal ads depicts knowing, deliberate conduct that Qutoutiao chose not to disclose. SPA-0017. As a result, in the Securities Act specific sections of the Complaint, "plaintiffs have alleged more than mere negligence [and so] the entire complaint sounds in fraud." *See In re JPMorgan Chase Sec. Litig.,* 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).

Plaintiff argues that such allegations of "untrue statements of material facts" do not sound in fraud. Br. at 26. But this Court in *Rombach*—in reasoning that has been frequently cited within the Second Circuit—stated explicitly that this precise phrase is "classically associated with fraud." 355 F.3d at 172; *see In re Marsh & McLennan Cos., Inc. Sec. Lit.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y.

---

the Registration Statement. Br. at 25. This argument is unsupported and nonsensical.

2006); *Gentiva*, 932 F. Supp. 2d at 394; *JPMorgan*, 363 F. Supp. 2d at 635. Under the "1933 Act Claims" section of the Complaint, Plaintiff repeatedly uses such phrasing. *E.g.*, ¶¶ 320, 322, 324.

Additionally, Plaintiff's attempt to disclaim fraud in the Securities Act claims, or against the Underwriter Defendants, accomplishes nothing. *See In re Alcatel Sec. Litig.,* 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005) ("Plaintiffs' boilerplate disclaimers that their allegations are incorporated into their claims under sections 11 and 12(a)(2) 'except to the extent any such allegation may be deemed to sound in fraud' . . . is insufficient to remove those allegations from the requirements of Rule 9(b)"); *JPMorgan Chase*, 363 F. Supp. 2d at 635 ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud[.]"). Indeed, Plaintiff's claim that all Defendants "duped investors" (Add. 0057; ¶ 10) puts the lie to his insistence on appeal that the Complaint alleges that those same Defendants failed only to use reasonable care. Br. at 27–28 (citing ¶ 378).

Finally, although Plaintiff argues that he expressly pleads negligence, even where a complaint "states it sounds only in negligence," Securities Act claims still sound in fraud where the complaint "implies an intentional scheme of misconduct by Defendants[.]" *Zirkin v. Quanta Cap. Holdings Ltd*., 07CV851, 2009 U.S. Dist. LEXIS 4667, at *32–34 (S.D.N.Y. Jan. 22, 2009).

## C. Affirmance of the Rule 9(b) Standard Alone Warrants Affirmance

If this Court rules—as it should—that Rule 9(b) applies, this Court can affirm the dismissal of the Securities Act claims with no further analysis. Plaintiff stated that he "is not appealing t[he] ruling" by Judge Stein that the "1934 Act counts failed to state any actionable 'misstatements or omissions of material fact' with the specificity required by Rule 9(b)". Br. at 15. Plaintiff also concedes that the Exchange Act and Securities Act claims involve "substantially the same materially false and misleading statements" and "the alleged injury is of the same general character[.]" SPA-0018. Thus, Plaintiff's substantively identical Securities Act claims must also be dismissed under Rule 9(b)'s heightened pleading standard. *See Ladmen*, 2008 U.S. Dist. LEXIS 76670, at *50 (dismissing Securities Act claim that sounds in fraud where Plaintiff's claims could "not satisfy Rule 9(b)'s particularized pleading requirement.").

The dismissal can also be affirmed because the Complaint fails under Rule 9(b) to plead particularized facts showing the Defendants' scienter, an argument that Defendants raised below but the District Court did not reach. On appeal, Plaintiff does not even attempt to argue Defendants acted with scienter, stating merely that scienter is not an element required to plead a Securities Act violation. But this broad assertion is irrelevant, because when Securities Act claims trigger Rule 9(b), plaintiff must "convey through factual allegations that the defendants

made materially false statements, and that they did so *with scienter*." *Coronel v. Quanta Cap. Holdings Ltd*., 07CV1405, 2009 U.S. Dist. LEXIS 6633, at *45–47 (S.D.N.Y. Jan. 23, 2009); *see also Geiger v. Solomon-Page Grp., Ltd*., 933 F. Supp. 1180, 1189–92 (S.D.N.Y. 1996) (dismissing Section 11 claim that sounded in fraud for failure to plead scienter).

As this Court recently stated, although "Securities Act [claims] are ordinarily subject to the pleading standards of Federal Rule of Civil Procedure 8(a), allegations that sound in fraud are subject to the heightened pleading standard of Rule 9(b) even though *scienter* is not an element of the Securities Act claims." *IAM Nat'l Pension Fund v. Farfetch Ltd.*, No. 21-2752-cv, 2023 U.S. App. LEXIS 8543, at *4 (2d Cir. Apr. 11, 2023) (emphasis in original).

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFF FAILS TO PLEAD ANY ACTIONABLE MISSTATEMENT OR OMISSION

The District Court dismissed both the Securities Act and the Exchange Act claims because "the Complaint fails to adequately plead . . . that defendants made misstatements or omissions of material fact." SPA-0006. This finding should be affirmed, regardless of which pleading standard applies, because "[t]he standard for determining whether a defendant made a material misstatement or omission is essentially the same under Section 10(b), Section 11, and Section 12." *Police & Fire Ret. Sys. of Detroit v. La Quinta Holdings Inc*., No. 16CV3068, 2017 U.S.

Dist. LEXIS 221703, at *14 (S.D.N.Y. Aug. 24, 2017); *see also I. Meyer Pincus & Assocs., P.C. v. Oppenheimer & Co.*, 936 F.2d 759, 761 (2d Cir. 1991) ("The central inquiry in determining whether a prospectus is materially misleading under both Section 10(b) and Section 11 is [] 'whether defendants' representations, taken together and in context, would have [misled] a reasonable investor[.]'").

As explained below, Plaintiff's conclusory falsity allegations are "insufficiently definite" and cannot satisfy "[]either the pleading requirement of Rule 9(b) nor the [Rule 8] pleading standards for a Section 11 claim" that does not sound in fraud. *See Zellner v. Citigroup Glob. Mkt. Holdings Inc.*, No. 21CV2413 2022 U.S. Dist. LEXIS 170804, at *3 (S.D.N.Y. Sept. 21, 2022).

### A. Plaintiff Fails to Plead a Materially False or Misleading Statement or Omission Regarding Illegal Advertisements

#### 1. Qutoutiao Clearly Disclosed Risks Associated with Complying with Chinese Advertising Regulations

The central thesis of Plaintiff's claims is that Qutoutiao "assured investors that [it] had robust compliance measures to prevent . . . illicit advertisements" but that in reality such measures were ineffective. Br. at 34. This assertion, however, is unsupported and contradictory to both Plaintiff's own allegations and Qutoutiao's disclosures.

At the time of the IPO and SPO, Qutoutiao indisputably disclosed the risks associated with Chinese advertisement regulations:

- "[W]e are obligated to monitor the advertising content shown on our mobile applications to ensure that such content is true, accurate and in full compliance with applicable laws and regulations." A-291.

- "Violation . . . may subject us to . . . fines, confiscation of our advertising income, [or] even . . . terminat[ion] [of] our advertising operation[.]" *Id.*

- "If an illegal advertisement featured on our mobile applications were to have excessive negative effects, our brand and reputation may be harmed[.]" *Id.*

Qutoutiao also warned investors of the various factors that make full compliance challenging, including the "uncertainty in the application of these laws and regulations[,]" advertisers' efforts to "evade . . . monitoring," and their "inappropriate[] influence[]" on Qutoutiao employees. *Id.*

In view of these challenges, Qutoutiao never promised that it would be able to eliminate false advertisements. Instead, Qutoutiao "disclose[d] that it '***cannot assure [investors] that all the advertisements shown on [its] mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations***.'" SPA-0010.[10] Therefore, as the District Court correctly held,

---

[10] Contrary to Plaintiff's argument, it is clear that this disclosure is about present, not future, risks. Br. at 39. The use of "are" is grammatically "present tense" framing, *Barscz v. Dir., OWCP*, 486 F.3d 744, 749–50 (2d Cir. 2007), and courts find similar disclosures to constitute warnings of existing risk. *See Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 409–10 (S.D.N.Y. 2020) (disclosure that "we cannot guarantee that *we are now* or will in the future be in full compliance with any such laws" was a disclosure about possible existing "*then* failing[s]")

Qutoutiao's "disclosure documents leave no doubt that investors were warned of the risks" associated with complying with Chinese advertising regulations. SPA-0010. Since Qutoutiao's disclosures state "exactly the 'fact' that [Plaintiff] contends has been covered up," Plaintiff's claims must fail "[a]s a matter of law." *I. Meyer*, 936 F.2d at 762–63; *Olkey v. Hyperion 1999 Term Trust, Inc*., 98 F.3d 2, 9 (2d Cir. 1996) ("Since the plaintiffs' claims are contradicted by the disclosure of risk made on the face of each prospectus, no set of additional facts could prove the plaintiffs' claims . . . [t]his court has consistently affirmed Rule 12(b)(6) dismissal of securities claims where risks are disclosed in the prospectus.").

Multiple courts within the Second Circuit have similarly dismissed complaints involving alleged failures to comply with Chinese regulations where the risk was, in fact, disclosed. *Jiajia Luo v. Sogou, Inc.,* 465 F. Supp. 3d 393 (S.D.N.Y. 2020) involved essentially the same allegations. The complaint alleged that another Chinese company, Sogou, failed to disclose its deficiencies in complying with Chinese advertisement regulations, which resulted in fines and a business suspension. *Id.* at 399–402, 404–05. The court held that plaintiffs failed

---

(emphases in original); *In re Telefonaktiebolaget LM Ericsson Sec. Litig*., No. 22CV1167, 2023 U.S. Dist. LEXIS 91038, at *34–37 (E.D.N.Y. May 24, 2023) ("no reasonable investor would have understood Defendants' statements . . . to contain 'assurances of actual compliance'" where company disclosed that it "*cannot assure* [violations of laws and regulations] *do not* occur.").

to plead an actionable misrepresentation or omission under the Securities Act because Sogou "provided no assurance . . . that [its] procedures would be sufficient to guarantee compliance with PRC law or to prevent the dissemination of illegal content." *Id.* at 408–10. Here, Qutoutiao similarly told investors that it "cannot assure . . . compliance" with Chinese advertisement regulations. A-291. It thus "warn[ed] investors of exactly the risk the plaintiffs claim was not disclosed." *Sogou,* 465 F. Supp. 3d at 411. Just like Sogou, Qutoutiao neither touted "the adequacy of [its] compliance program" nor "descri[bed] [its] compliance measures in confident detail," *id.* at 410, and therefore "no reasonable investor could infer that [Qutoutiao's] compliance efforts were particularly effective." *Id.* at 409–10.[11]

Similarly, the district court in *Sandoz v. Waterdrop Inc.* held that a company did not violate the Securities Act as it made no misleading statements or omissions regarding the Chinese regulatory environment where "[t]he Registration Statement repeatedly advises investors of the risks to [the company's] business posed by the

---

[11] Plaintiff argued in his Opposition brief (A-412) that *Sogou* is distinguishable because (i) Qutoutiao was in violation of Chinese advertising laws at the time of the IPO and SPO; (ii) Qutoutiao boasted about its compliance measures while knowing they were ineffective; and (iii) Qutoutiao's statements regarding compliance were materially misleading when made. But these arguments fail because Qutoutiao—like Sogou—never promised it was in compliance with Chinese advertising laws or that its compliance measures were effective, and Plaintiff also fails to allege any contemporaneous falsity in Qutoutiao's offering documents. *See infra* at 45–47.

Chinese regulatory regime." No. 21CV7683, 2023 U.S. Dist. LEXIS 18745, at *10, 28–31 (S.D.N.Y. Feb. 3, 2023), *aff'd sub nom. Qi Mi v. Waterdrop Inc*., No. 23–301, 2024 U.S. App. LEXIS 961 (2d Cir. Jan. 16, 2024). Indeed, the company there made identical disclosures that "we . . . cannot assure you that we can . . . maintain full compliance" and "[w]e face uncertainties relating to the change in regulatory regime." *Id*. *Asay v. Pinduoduo Inc.,* No. 20–1423, 2021 U.S. App. LEXIS 26176, at *6–10 (2d Cir. Aug. 31, 2021) held that a Chinese company made no actionable misrepresentations or omissions regarding compliance efforts with Chinese regulations because the company warned investors that such efforts "may not always be successful", which "suggest[s] caution (rather than confidence) regarding the extent of [its] compliance."

In the face of Qutoutiao's extensive risk disclosures, Plaintiff argues that Qutoutiao made two isolated statements allegedly touting the success of its advertising regulation compliance. That argument fails, because reviewing "statement[s] in isolation inappropriately ignores the extensive disclosures made throughout the Registration Statement" regarding advertising compliance risks. *See In re Riskified Ltd. Sec. Litig*., No. 22CV3545, 2023 U.S. Dist. LEXIS 96389, at *26 (S.D.N.Y. June 2, 2023). Indeed, when viewed in context, the disclosures at issue do not support Plaintiff's position.

*First*, Plaintiff alleges that Qutoutiao stated it used "artificial intelligence" and other technologies to screen out "objectionable visual content with a high degree of accuracy." Br. at 35. However, as the District Court correctly held, Qutoutiao's "reference to 'artificial intelligence'" measures in the disclosures "are not about ***advertising*** regulations at all—they relate to Qutoutiao's compliance with PRC regulations that govern ***content***, such as news articles" it delivers to its users. SPA-0010. Indeed, the disclosures regarding "artificial intelligence" are under the heading "***Content*** Screening Technology." The immediately preceding section entitled "***Advertising***" also focuses on technology but does not include regulatory compliance-related disclosures; it instead focuses on enhancing advertisement performance by predicting how likely a user will be interested in a particular advertisement. ¶ 328. This context unmistakably indicates to investors that the "artificial intelligence" and related technologies were deployed for screening out non-compliant content, not illegal advertisements.

On appeal, Plaintiff argues that the content-specific technologies must have also been applied to advertisements because (1) the word "content" has a broad dictionary definition and (2) other portions of Qutoutiao's disclosures used the term "advertising content." Br. at 37–39. But dictionary definitions and similar terms used in other parts of the disclosures ignore the context that Qutoutiao specifically described the technologies at issue in the "Content Screening

Technology" section and did not include the same discussion in the "Advertising" section. In view of this placement, no reasonable investor could have been misled to believe that Qutoutiao touted the effectiveness of its advertising law compliance, as the District Court correctly held (SPA-0009–10). *See In re ProShares*, 728 F.3d at 102–03 (prospectus must be "read [] as a whole . . . cover-to-cover" and disclosures "taken together and in context[.]").

*Second*, Plaintiff calls out Mr. Tan's statement that Qutoutiao has "one of the best track records in compliance among all the sizeable newsfeed players in the space as we have put in significant efforts from the very beginning in building our content compliance teams and capabilities." Br. at 35–36. However, such statements were made in the Q2 2019 earnings call on September 5, 2019—long after the effective date of the IPO and SPO offering documents—and so cannot form the basis of a Securities Act claim as a matter of law. *Id*.; *infra* at 45–47.

In any event, the District Court correctly held that Plaintiff fails to plead falsity regarding that statement, because "the Complaint does not offer factual pleadings to indicate that QTT's competitors had better 'track records'[.]" SPA-0010. Additionally, the reference to the "significant efforts" Qutoutiao put forth for compliance is simply a "[v]ague positive statement[] regarding a corporate entity's risk management strategy . . . [and is] too general to cause a reasonable investor to rely upon [it]." *Asay*, 2021 U.S. App. LEXIS 26176, at *8–9

(company describing its anti-counterfeiting measures as "strict" "is a mere statement of non-actionable puffery"). Indeed, the District Court correctly noted several similar statements cited by Plaintiff were "inactionable puffery." SPA-0010–11 (statements about how the "quality of our advertisers has consistently improved" or how Qutoutiao has "closely followed rules and regulations of the industry and the country" mere puffery).

### 2. Plaintiff Fails to Plead that a Substantial Portion of Qutoutiao's Revenue Was Derived from Illegal Advertisements

Plaintiff's second theory regarding illegal advertisements is that Qutoutiao failed to disclose a "substantial portion" of Qutoutiao's "increasing revenue came from illegal advertisements." Br. at 18, 40–41. However, the District Court correctly held that such allegations are "wholly conclusory" as Plaintiff does not allege "even approximately, how many of QTT's customers were unqualified advertisers or what portion of QTT's revenues were derived from such advertisers." SPA-0008–9. Indeed, "the Complaint's factual assertions do not offer any indication as to the magnitude of the allegedly illicit advertising activity" and Plaintiff has not pled that "illegal advertising comprised any more than—at most—a nominal share of QTT's revenues." SPA-0008. Thus, this allegation fails as a matter of law.

For the same reasons, Plaintiff's assertion that Qutoutiao—because it described the "reasons for its success"—should have characterized illegal advertising as something that "materially contributed to that success" (Br. at 40–41, 43) must also be rejected. *See Africa v. Jianpu Tech. Inc*., No. 21CV1419, 2022 U.S. Dist. LEXIS 176631, at *22–23 (S.D.N.Y. Sept. 28, 2022) (dismissing claim that defendant "had a duty to disclose [] unlawful practices" as it put "the reasons for its success at issue" because "conclusory assertions aside . . . [plaintiff] makes no specific allegations that . . . [the] unlawful practices were a 'material' reason for the . . . increasing revenues."); *In re Qiwi plc Sec. Litig.,* No. 20CV6054, 2023 U.S. Dist. LEXIS 197945, at *40–42 (E.D.N.Y. Nov. 3, 2023) (dismissing plaintiff's claim that company put "reasons for its success at issue" and so needed to disclose "improper operations" because plaintiff's claim that a "material source of [the] success is the use of improper or illegal business practices" is "conclusory" as there were no allegations as "to what extent illegal transactions contributed to revenue[.]").  Indeed, "statements regarding a company's growth" are not misleading where, as here, Qutoutiao did "not suggest that the undisclosed activity alleged by Plaintiff was not occurring." *Schiro v. Cemex*, 396 F. Supp. 3d 283, 296–97 (S.D.N.Y. 2019).

Plaintiff's remaining challenges to the District Court's conclusions are unpersuasive. *First*, Plaintiff is wrong that he need not plead the magnitude of the

illicit advertising activity. Br. at 45. Qutoutiao admitted that it "cannot assure [investors] that all the advertisements shown on [its] mobile applications are true, accurate, appropriate and in full compliance with applicable laws and regulations." A-291. Plaintiff's case thus hinges on its assertion that Qutoutiao failed to warn investors of the *magnitude* of illegal advertising, as Qutoutiao had already warned that illegal advertisements may exist.

Failure to plead magnitude is crucial because if the alleged illegal advertisement generated "revenue was only a small portion of [Qutoutiao's] total operations, there is not a 'substantial likelihood' . . . it 'would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.'" *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 26–27 (2d Cir. 2013); *Hutchison*, 647 F.3d at 485–89 (failure to plead materiality where plaintiff alleged defendants did not disclose certain loans were impaired as the complaint failed "to allege *how much* of the . . . [loans were] impaired at the time of the IPO"); *Garber v. Legg Mason Inc.*, 347 F. App'x 665, 669–70 (2d Cir. 2009) (Securities Act claim based on alleged failure to disclose a "dramatic increase in [the company's] expenses" cannot satisfy ordinary pleading standards where the "complaint does not contain a single factual allegation relating to the *magnitude* of the expense increase," as without such detail the claim is "too conclusory").

Bare allegations that an issue was "substantial" are too conclusory to be credited—including under the Rule 8 pleading standard. *4Fs Family, Inc. v. Lifchitz*, No. 21-903CV, 2021 U.S. App. LEXIS 34569, at *3–4 (2d Cir. Nov. 22, 2021) (affirming dismissal of Plaintiffs' Section 11 claim under ordinary pleading standard where Plaintiff alleged company's operating errors or system failures were "'substantial,' 'systemic[,] and recurring,'" as such allegations were "'conclusory' claims, which are 'not entitled to be assumed true'"); *Caldwell v. Berlind*, 543 F. App'x 37, 40–41 (2d Cir. 2013) (failure "to state a plausible Securities Act claim" under Rule 8 where plaintiff alleged company "owned, but did not disclose that it owned, billions of dollars of CDOs" because plaintiff failed to allege "*how much* [the company] held at the time of the offerings, or *how much was sufficient to be material* to an investor at the time of the challenged offerings.").

The cases Plaintiff cites to argue that he does not need to plead magnitude do not support his position. In *United States ex rel. Chorches for Bankr. Est. of Fabula v. Am. Med. Response, Inc.*, 865 F.3d 71, 82–83 (2d Cir. 2017), the court held that through no "lack of diligence on their part, plaintiffs lacked the ability to identify *specific* documents containing false claims that [defendant] submitted to the government," with the court noting that the "procedures established by [defendant] . . . made it virtually impossible for most employees to have access to

all of the information necessary" for plaintiff to plead the "*exact* billing numbers" for the false claims. Qutoutiao does not argue Plaintiff's claims are conclusory because they fail to identify any *specific* illegal advertisements or *exact* volume; rather, Plaintiff cannot even allege any *estimated* amount. And Plaintiff has no well-pleaded allegations as to why the information about the magnitude of illegal advertisements was not accessible by their confidential witness. Similarly, in *Alix v. McKinsey & Co.*, 23 F.4th 196, 209 (2d Cir. 2022), the court overruled the district court decision that held the "allegations [were] insufficient because they did not 'specify any *single* act'" of fraud where the amended complaint actually did identify "*specific* cases" of fraud—going far beyond the particularity Plaintiff pleads here.[12]

Finally, in *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46–47 (2011), plaintiff raised well-pleaded facts about the magnitude of the "risk" to a company's "leading revenue-generating product," alleging that "medical experts revealed a plausible causal relationship between [the product] and [a medical

---

[12]    *United States v. Strock*, No. 15CV0887, 2021 U.S. Dist. LEXIS 54910 (W.D.N.Y. Mar. 23, 2021) is cited to argue that "Rule 9(b) does not require that damages be pled with particularity". Br. at 45. That is irrelevant because the issue at hand is not about damages—it is about how Plaintiff fails the Rule 8 or 9(b) pleading standards due to his conclusory allegations. Furthermore, in *Strock*, the Government alleged that it paid defendants' company "approximately $21 million on the contracts it fraudulently obtained" and so the magnitude of the issue is alleged. *Strock*, 2021 U.S. Dist. LEXIS 54910, at *9.

problem].” The magnitude of the risk was—unlike here—clear, as the product "accounted for 70 percent of [the company's] sales." *Id*. at 47.

*Second*, Plaintiff alleges that Qutoutiao failed to disclose its reduced reliance on Baidu for "ad screening services" after the Dianguan acquisition, which "rendered the presence of illegal ads even more likely." Br. at 4, 41–42. Plaintiff also speculates that the publicly stated reasons for acquiring Dianguan were misleading, as the real reason was to "reduce the oversight that Baidu had been providing" over the presence of illegal advertisements. SPA-0007.

That allegation also falls short, because the Complaint alleges no well-pleaded facts that Baidu provided stricter oversight or, indeed, any oversight over advertising compliance, or that Qutoutiao placed ***more*** illegal advertisements in the lead-up to or after the Dianguan acquisition.[13] As the District Court noted,

---

[13]    Plaintiff's parallel Item 303 of SEC Regulation S-K claim fails for the same reason. Item 303 requires Qutoutiao "to disclose only those trends, events, or uncertainties that it ***actually knows of*** when it files the relevant report with the SEC." *In re Micro Focus Int'l PLC Sec. Litig.*, No. 1:18CV06763, 2020 U.S. Dist. LEXIS 180621, at *28 (S.D.N.Y. Sept. 29, 2020). There are no well-pleaded allegations that Qutoutiao ever knew that the Dianguan acquisition could lead to more illegal ads. By contrast, in Plaintiff's cited case—*Panther Partners Inc. v. Ikanos Commc'ns, Inc.,* 681 F.3d 114, 120–21 (2d Cir. 2012)—this Court held that certain product defect issues were a known trend, as defendant there received "an increasing number of calls . . . alerting [defendant] to the fact that its chips were defective," and defendant's "Board of Directors were discussing the issue[.]"

Additionally, the Supreme Court has agreed to consider whether "failure to make a disclosure required under Item 303 can support a private claim under Section 10(b) [of the Exchange Act], even in the absence of an otherwise-

"Plaintiff has not pled non-conclusory facts, if accepted as true, that would suggest that QTT's motivation for acquiring Dianguan was anything other than what QTT publicly disclosed in its SEC filings," *i.e.*, "enhanc[ing] monetization efficiency and long-term business independency."  SPA-0007.  Plaintiff's Baidu-related allegation thus should be disregarded.  *See Bettis v. Se*, 16CV00025, 2016 U.S. Dist. LEXIS 180079, at *42–43 (S.D.N.Y. Dec. 20, 2016) (defendant did not issue misleading disclosures where plaintiff alleged failure to warn about certain risks as plaintiff did "not plead a single non-conclusory fact to support an inference" that the risks existed).

Moreover, even if the presence of illegal advertisements had become "more likely" after Qutoutiao reduced its reliance on Baidu, the Complaint still fails to provide any factual support regarding the magnitude of illegal advertisements. One illegal advertisement every month is more often than one every quarter, but neither is material for a platform that places more than 2 billion advertisements every day.

---

misleading statement."  *See* Petition for a Writ of Certiorari at i, *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, No. 22-1165, 2023 WL 3778765 (May 30, 2023); *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 144 S. Ct. 479 (2023) (granting petition).  That decision may provide an additional basis to affirm dismissal of Plaintiff's claims under Regulation S-K.

*Third*, Plaintiff attempts to infer the magnitude of Qutoutiao's illegal advertisements at the time of the September 2018 IPO and April 2019 SPO from its Q3 2020 18% revenue drop.  Br. at 13; 44–47.  But as correctly held by the District Court, this "percentage [drop] does not represent the percentage of illegal advertisements contributing to QTT's revenue."  SPA-0008–09.  Indeed, Plaintiff "presented no information to contradict defense counsel's assertion that the revenue drop was due to QTT's significant remedial efforts after the CCTV reports aired" and not due to the magnitude of illegal advertisements.  *Id*.  Critically, Plaintiff himself links the revenue drop to Qutoutiao's remedial measures (¶ 15, Br. at 13).  Thus, Plaintiff's argument that he need not "respond to or rebut Defendant's version of the facts" is beside the point.  Br. at 46.[14]

Regardless, Qutoutiao's revenue decline in Q3 2020 cannot, as a matter of law, show there was a significant amount of illegal advertisements on Qutoutiao's platform ***at the time*** of its September 2018 IPO or April 2019 SPO. To state a Securities Act violation, Plaintiff must plead Qutoutiao "knew or had reason to know, ***at the time the offering documents were filed***, that the statement was untrue." *Scott v. GM Co*., 46 F. Supp. 3d 387, 393–94 (S.D.N.Y. 2014), *aff'd,* 605

---

[14]  Additionally, Qutoutiao's focus on profitability had already caused a significant growth slowdown at the time of the CCTV Report; its Q2 revenues were essentially flat on a year-over-year basis.

F. App'x 52, 54 (2d Cir. 2015); *Demaria v. Andersen,* 318 F.3d 170, 175 (2d Cir.

2003) (Section 11 liability exists where "any part of the registration statement,

*when such part became effective*" contained a material misstatement or omission).

It "is not sufficient that, at some point after the registration statement became

effective, some subsequent event made it no longer accurate." *Sogou*, 465 F. Supp.

3d at 406.

Even assuming an inference can be drawn that a noteworthy amount of

illegal advertisements existed on *Qutoutiao* in mid-2020, no such inference is

permissible for September 2018 and April 2019, when the challenged statements

were made. *See In re Coty Inc. Sec. Litig*., No. 14CV919, 2016 U.S. Dist. LEXIS

41484, at *19 (S.D.N.Y. Mar. 29, 2016) (results showing decline in operating

income after IPO "offer little guidance as to the information that was available at

the time of the IPO."). Indeed, as the District Court correctly held, Plaintiff fails to

allege "that QTT would have had knowledge that illicit advertisements contributed

to more than a nominal amount of QTT's revenue *prior to* the July 15, 2020 CCTV

report" and "[t]he Complaint offers no [] data as to the number of complaints

[about illegal advertisements] *prior* to the major CCTV report[.]"  SPA-0008–9

(emphases in original). Plaintiff thus "offers no support for the claim" that

Qutoutiao "failed to adequately warn investors that certain 'Risk Factors' had

already materialized *at the time* of the IPO,'" and fails to plead any contemporaneous falsity in Qutoutiao's offering documents.  SPA-0009.

**B.**   **Plaintiff Fails to Plead a Materially False or Misleading Statement or Omission Regarding Related-Party Transactions**

     **1.**   **Plaintiff Fails to Plead that the Dianguan Acquisition Was a Related-Party Transaction**

Plaintiff's claim that Qutoutiao should have characterized the Dianguan acquisition as a related-party transaction fails because he pleads no facts showing that Dianguan was a related party.  *See* ¶¶ 107–11.  The Complaint does not allege common ownership, management, or control between the two companies prior to the acquisition.  *Id.;* SPA-0011 (enumerating types of related parties).  Instead, Plaintiff alleges that the acquisition was a related-party transaction solely because Qutoutiao's CEO, Eric Tan, had a close business relationship with Dianguan's founder, Xiang Liang.  Br. at 11.  Plaintiff alleges that—prior to the Dianguan acquisition—"Liang was the investment director of a company controlled by Defendant Tan" and—after the acquisition—"Tan became the majority owner of another company whose executive partner employed Liang[.]"  Br. at 49.  Due to this business relationship, Plaintiff concludes Dianguan was under Tan's control and "prevented from fully pursuing its own separate interests."  SPA-0012; ¶ 111.

The District Court correctly held that Tan's ownership of the latter company is of no consequence, as this "factual assertion does not suggest that Tan's

involvement . . . preceded QTT's acquisition of Dianguan." SPA-0012. Such claims cannot plead "any relationship between [Dianguan or Liang] and [Tan] *at the time* of the [Dianguan] [t]ransaction" and "thus does not adequately allege common control by [Tan] of the two companies *at the pertinent point*." *In re Hebron Tech. Co*., No. 20CV4420, 2021 U.S. Dist. LEXIS 181162, at *35–37 (S.D.N.Y. Sept. 22, 2021) (no related-party transaction where plaintiff did not plead that—at the time of the transaction—the parties were related).

Regarding Liang's involvement in former company, the District Court correctly held that Plaintiff merely alleges "Liang had a close business relationship with Defendant Tan," not facts supporting a plausible inference that the "relationship was so intertwined such that Dianguan would have been prevented from 'fully pursuing its own separate interests[.]'" SPA-0013. Indeed, "Plaintiff's suggestion that Tan has all-purpose control over Liang is quite speculative" and the "simple presence of a business relationship between Tan and Liang is insufficient to trigger a duty to disclose" a related-party transaction. *Id*.

*Hebron* is instructive. 2021 U.S. Dist. LEXIS 181162, at *34–37. There, plaintiff alleged that defendant company failed to disclose a related-party transaction where it entered into a purchase agreement with another entity called Loong Fang. The theory was the exact same as here—that it was a related-party transaction because the largest shareholder of defendant company (Liu) controlled

the individual (Shan Jiang) who signed the transaction on behalf of Loong Fang, where Shang Jiang worked at two companies owned by Liu. *Id*. at *6–7; 34–35. The court rejected this theory, noting that "[e]ven if the [complaint] had pled facts indicating that Shan Jiang had assumed his posts at the two companies as of the time of the Loong Fang [] Transaction, the facts pled would still not describe facts meeting the related party standard . . . [plaintiff] does not plead facts plausibly demonstrating how Shan Jiang's role at two companies controlled by Liu gave Liu control over Loong Fang, a third, and separate, company . . . the [complaint's] evident implication that Liu has all-purpose control over Shan Jiang is thus speculative." *Id*. at 34–37.

Similarly, Plaintiff here argues that the Dianguan acquisition was a related-party transaction because Liang sold Dianguan to Qutoutiao while being employed or subsequently employed at two different companies connected to Tan. But this does not support a plausible inference of either (i) Tan's "all-purpose control over" Liang, or (ii) Tan's control over Dianguan, a "third, and separate, company." *Id*. Critically, "the fact of a separate association between the two men does not mean that [Tan] thereby controlled [Liang] in his capacity at [Dianguan], so as to make [Qutoutiao's] purchase of . . . [Dianguan] a related party transaction." *Id. at* *40–41. Plaintiff also pleads no facts showing how Liang was dependent on Tan for his livelihood—this allegation is nothing more than pure speculation. Br. at 51.

Plaintiff's claim fails for the separate reason that Qutoutiao is only required to disclose ***material*** related-party transactions. *In re Francesca's Holdings Corp. Sec. Litig.*, No. 13CV6882, 2015 U.S. Dist. LEXIS 50726, at \*42–45 (S.D.N.Y. Mar. 31, 2015); *ECA*, 553 F.3d at 202. Plaintiff makes no effort to allege that the Dianguan acquisition was a material transaction. At RMB15 million, or approximately 0.5% of Qutoutiao's 2018 revenue, it was not as a matter of law. A-277; 314.

Notably, Plaintiff does not cite a single in-Circuit case to argue that the Dianguan acquisition was a related-party transaction. And each of the cases Plaintiff cites is distinguishable, underscoring how Plaintiff's novel argument has no basis in law. In *Garcia v. J2 Glob.*, No. 2:20CV06096, 2021 U.S. Dist. LEXIS 78853, at \*3–7, 33–37 (C.D. Cal. Mar. 5, 2021) and *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 939 (C.D. Cal. 2012), the alleged related-party transactions involved individuals with formal titles or ties with both of the companies at-issue. By contrast, there is no allegation that Liang had official titles or ties to Qutoutiao, or Tan had such titles or ties with Dianguan.

Plaintiff cites *Turner Ins. Agency, Inc. v. Farmland Partners Inc.*, No. 18CV02104, 2019 U.S. Dist. LEXIS 103526, at \*10 (D. Colo. June 18, 2019) for the proposition that a consultant for a company may be a related party. Br. at 49–50. However, in *Turner* the consultant was an individual "that [the company]

relied on heavily for business strategy advice, which placed him in a position to influence the management . . . of [the company] . . . when he borrowed money from the company." *Turner*, U.S. Dist. LEXIS 103526, at *10. Here, there are no allegations that Liang had direct influence over Qutoutiao's strategy, or Tan had such influence over Dianguan.

In *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1117–18 (N.D. Cal. 2017), plaintiff alleged that one company was "formed . . . for the sole purpose of purchasing loans from" the other company, and so were related parties. There are no allegations that Dianguan was founded for any Qutoutiao-related purpose, and Dianguan was an independent company. *In re Tel-Save Sec. Litig.*, No. 98CV3145, 1999 U.S. Dist. LEXIS 16800, at *11 (E.D. Pa. Oct. 19, 1999) involved the business relationship between two *entities*. This Court should be persuaded by the far more analogous in Circuit guidance of *Hebron,* which addressed related-party transactions in the context of business relationships between individuals.

## 2. The Related-Party Transactions with Mengtui, Fangce, and Shihui Miao Were Timely Disclosed

Plaintiff does not dispute that the related-party transactions with Mengtui, Fangce and Shihui Miao were disclosed. And the District Court correctly held these transactions were "disclosed in QTT's 2019 annual report—the first annual report after these alleged related-party transactions took place[,]" satisfying

Qutoutiao's obligations.  SPA-0013.  Plaintiff contends that the Complaint alleged these transactions began prior to the September 2018 IPO, and so should have been disclosed earlier.  Br. at 52.  Plaintiff is wrong.

To allege the existence of related-party transactions involving Mengtui, Fangce, or Shihui Miao, the Complaint relies entirely on allegations that short-seller Wolfpack Research made in a December 2019 report (the "Wolfpack Report").  ¶¶ 112–115.  The Wolfpack Report's analysis regarding Mengtui, Fangce, and Shihui Miao, which purportedly indicated they were Qutoutiao's related parties, is, in turn, based on a "50,000-ad sample . . . taken during a period of approximately four hours *on September 12, 2019*"—approximately a year after the IPO and five months after the SPO.  A-349.

Plaintiff argues that the Wolfpack Report stated this was the "most recent" survey of advertisements on Qutoutiao's platforms, and did not state this was the first date of the related-party transactions.  Br. at 52.  But Plaintiff does not state when previous surveys were undertaken, if they were done prior to the IPO or SPO, and what the findings of those surveys were.  *Id*.  Plaintiff thus fails to plead any facts regarding Qutoutiao's transactions with these entities prior to (or after) September 12, 2019.  *See Hebron*, 2021 U.S. Dist. LEXIS 181162, at *56 ("well-pled facts" needed to "adequately plead . . . a related party transaction.").

## III. PLAINTIFF'S LACK OF STANDING IS ANOTHER BASIS FOR AFFIRMING IN PART THE DISMISSAL OF HIS COMPLAINT

Plaintiff's lack of standing to assert Section 11 claims for the SPO or Section 12(a)(2) claims is an alternative ground for affirming in part.

*First*, Plaintiff lacks standing to assert Section 11 claims for the SPO. The Supreme Court recently confirmed, as this Court has long held, that "[t]to bring a claim under § 11, the securities held by the plaintiff must be traceable to the particular registration statement alleged to be false or misleading." *Slack Techs., LLC v. Pirani*, 598 U.S. 759, 768 (2023); *Barnes v. Osofsky,* 373 F.2d 269, 273 (2d Cir. 1967) (Section 11 claim may be brought "only by . . . those who purchase[d] securities that are the *direct subject* of the prospectus and registration statement."). According to Lead Plaintiff's certification in the District Court, he purchased all his Qutoutiao shares in September 2018, more than 6 months before the April 2019 SPO. SA–133-35. By definition, he cannot carry his burden to "trace" his purchased shares to the SPO. *See Lau v. Opera Ltd.,* 527 F. Supp. 3d 537, 561 (S.D.N.Y. 2021) (Plaintiff "lacks standing to bring the Section 11 claims" where—based on the timing of her purchases—she "failed to allege how the stocks she purchased were traceable to the stocks issued" in the IPO and SPO).

*Second*, "[o]nly persons who '*directly purchase* securities from the defendant in a public offering, rather than on the secondary market,' have standing to bring a claim under Section 12(a)(2)." *HEXO*, 524 F. Supp. 3d at 304-05.

Plaintiff admittedly "did not buy [Qutoutiao ADSs] in the IPO or SPO directly from Defendants[.]" Compl. n.79. He thus lacks standing to assert the Section 12(a)(2) claim, for either himself or the putative class. *Stadnick v. Vivint Solar, Inc.,* No. 14CV9283, 2015 U.S. Dist. LEXIS 166008, at *53–56 (S.D.N.Y. Dec. 10, 2015), *aff'd*, 861 F.3d 31 (2d Cir. 2017) (dismissing Section 12(a)(2) claim because "an individual may [not] represent absent class members with regard to claims as to which he or she has no individual standing[.]"). Critically, "[t]here must be a named plaintiff sufficient to establish jurisdiction over each claim advanced." *Id*.

The District Court's reliance on *Langan v. Johnson & Johnson Consumer Companies, Inc*., 897 F.3d 88 (2d Cir. 2018) to find Plaintiff has standing to assert both claims is, respectfully, misplaced. In *Langan*, unlike here, the named plaintiff "herself ha[d] standing to sue" already and the singular "point of contention [was] whether [plaintiff] has standing to bring a class action on behalf of unnamed . . . class members from other states[,]" which this Court ruled was a "question of predominance under Rule 23(b)(3)" instead of Article III standing. 897 F.3d at 92–94. Thus, *Langan* does not address Securities Act statutory standing to bring Section 11 or 12(a)(2) claims at all and does not silently rewrite decades-long Securities Act standing requirements.

Finally, decisions that post-date *Langan*—including by the Supreme Court and this very Court—continue to hold that the same decades-long standing requirements for bringing Securities Act claims are alive and well. *See New England Carpenters Guaranteed Annuity & Pension Funds v. DeCarlo*, 80 F.4th 158, 179 (2d Cir. 2023) ("In order to have standing under § 12(a)(2), . . . plaintiffs must have purchased securities *directly* from the defendants"); *Slack*, 598 U.S. at 770; *HEXO,* 524 F. Supp. 3d at 304–05; *Lau,* 527 F. Supp. 3d at 561.

## IV.  THE DISTRICT COURT ACTED WITHIN ITS DISCRETION IN DENYING LEAVE TO AMEND

This Court "review[s] the district court's denial of leave to amend for abuse of discretion." *Kim*, 884 F.3d at 105–06.  Where, as here, "[P]laintiffs requested leave to amend in a cursory manner without any explanation for how [he] would be able to cure the complaint's defects," the District Court does "not abuse its discretion in denying [P]laintiffs' leave to amend." *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018).  Plaintiff's statement in his Opposition briefing that he requests leave to amend lacks any detail regarding how the Complaint's defects could be cured.  A-436.  Further, denials of leave are affirmed even where, as here, the District Court "never explicitly denied . . . [the] leave to amend[.]" *See Porat v. Lincoln Towers Cmty. Ass'n,* 464 F.3d 274, 275–76 (2d Cir. 2006).

Critically, "leave to amend a complaint need not be granted when amendment would be futile." *Kim*, 884 F.3d at 105–06.  Here, after strategically

opting not to propose a further amended complaint below, Plaintiff belatedly submits one on appeal that purportedly deletes allegations that sound in fraud. Br. at 53. Such an amendment would be futile, however, because the Complaint does not state a Securities Act claim even under Rule 8. Deleting allegations that sound in fraud—while adding nothing—would not cure the Complaint's defects. *See Attestor Value Master Fund v. Republic of Argentina*, 940 F.3d 825, 833 (2d Cir. 2019) (amendment would be futile because plaintiffs "do not represent that they could *add* an allegation" required to state a claim). In fact, the proposed amendment underscores those defects: its allegations that Qutoutiao placed illegal ads rely entirely on the July 2020 CCTV Report, without a single allegation that Qutoutiao placed illegal ads—let alone derived substantial revenue from them—at the time of the September 2018 IPO or April 2019 SPO. Thus, Plaintiff's citation to *Rombach* actually supports Defendants. The *Rombach* court denied leave to amend where, as here, the "negligence claim," even "if properly pleaded, would be defeated in any event[.]" 355 F.3d at 176.

## CONCLUSION

For the foregoing reasons, the District Court's judgment dismissing the Complaint should be affirmed.

Dated: April 3, 2024     Respectfully submitted,

**SIMPSON THACHER & BARTLETT LLP**

*/s/ George S. Wang*
George S. Wang
gwang@stblaw.com
Bo Bryan Jin
bryan.jin@stblaw.com
Eric Yang
eric.yang@stblaw.com
425 Lexington Avenue
New York, New York 10017
Telephone: 212-455-2000
Facsimile: 212-455-2502

*Attorneys for Defendants-Appellees Qutoutiao, Inc., Eric Siliang Tan, Yongbo Dai, Jianfei Dong, Shaoqing Jiang, Feng Li, Lei Li, James Jun Peng, Jingbo Wang, Oliver Yucheng Chen, and Xiaolu Zhu*

**O'MELVENY & MYERS LLP**

*/s/ Jonathan Rosenberg*

Jonathan Rosenberg
jrosenberg@omm.com
B. Andrew Bednark
abednark@omm.com
Amber L. Covucci
acovucci@omm.com
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
Facsimile: (212) 326-2061

*Attorneys for Defendants-Appellees Citigroup Global Markets Inc., Deutsche Bank Securities Inc., China Merchants Securities (HK) Co., Ltd., UBS Securities LLC, Keybanc Capital Markets, Inc., CLSA Limited, Haitong International Securities Company Limited, Jefferies Group LLC, and Lighthouse Capital International Inc.*

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this brief is in compliance with the type form and volume requirements. Specifically, this brief is proportionately spaced; uses Times New Roman 14-point font; and contains 12,776 words, exclusive of the material not counted under Rule 32(f) of the Federal Rules of Appellate Procedure.

*/s/ Bo Bryan Jin*

Bo Bryan Jin